UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HUNTINGTON COPPER
MOODY & MAGUIRE, INC.          :     NO. 1:04-CV-751
                               :
                               :
          Plaintiff,           :
                               :     **OPINION AND ORDER**
     v.                        :
                               :
                               :
CHARLES CYPERT, et al.         :
                               :
                               :
          Defendants.          :


     This matter is before the Court on Defendants' Motion to
Dismiss for Lack of Personal Jurisdiction (doc. 2), Plaintiff's
Response in Opposition (doc. 5), and Defendants' Reply (doc. 8),
Plaintiff's Motion to Remand (doc. 4), Defendants' Response in
Opposition (doc. 9), and Plaintiff's Reply (doc. 10).  The Court
held a hearing on these matters on February 10, 2005.

**I. Background**

     Plaintiff Huntington Copper Moody & Maguire, Inc.
("HCMM"), an Ohio-based business-consulting company, brings this
action against two former employees who left to work for a
competitor.  Plaintiff alleges claims for breach of contract,
breach of fiduciary duty, conversion, tortious interference with
contractual, business and employment relations, and for violations
of Ohio's Uniform Trade Secret Act (doc. 1).  Defendant Hartley

1

("Hartley") worked as a full time sales representative in the greater New York area under a contract with Plaintiff (Id.). Hartley was required by HCMM to maintain regular contact with the Ohio office, which regularly faxed him documents and sales material, which set up sales appointments for him, and to which he telephoned on at least a daily basis (doc. 2). Hartley's contract included a non-competition clause, and a choice of law provision designating that the contract "shall be governed in all respects under the laws of the State of Ohio," and that "[a]ny legal action. . .commenced under this Agreement shall be filed in the Court of Common Pleas, Hamilton County, Ohio" (doc. 1).

Defendant Cypert ("Cypert") did not have a written contract with Plaintiff, but provided independent consulting for Plaintiff over a period of three years, during which time he sent bills to Plaintiff, and provided services in Washington, Texas, and Michigan (doc. 5). In June 2003, Cypert provided services to Plaintiff in Cincinnati, for three days at HCMM's offices (Id.). Shortly thereafter, Cypert conducted business analysis for HCMM clients in Springfield, Ohio, during two separate weeks of June 2003 (Id.). In February 2004, Cypert returned to Ohio again, for four days, during which time he allegedly accessed trade secrets and confidential information that he allegedly subsequently used against Plaintiff (Id.).

On November 8, 2004, Defendants filed their motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(2), premised on the theory that this Court lacks personal jurisdiction over them (doc. 2). Shortly thereafter, Plaintiff filed its motion to remand this matter to the Hamilton County Court of Common Pleas, based on the forum selection clause in Hartley's contract (doc. 4). These matters are both ripe for the Court's consideration. The Court will first direct its attention to the question of personal jurisdiction.

## II. Defendants' Motion to Dismiss

### A.  The Fed. R. Civ. P. 12(b)(2) Standard

A court may determine its jurisdiction on the basis of written materials, when a defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). <u>Mimco Inc. v. Virginia Iron & Metal Recycling, Inc.</u>, 840 F. Supp. 1171, 1173 (S.D. Ohio 1993) ("plaintiff need only demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.") When considering whether personal jurisdiction exists, the Court will consider the facts and evidence in the light most favorable to the plaintiff and cannot consider facts proffered by the defendant that conflict with any offered by the plaintiff. <u>Bird v. Parsons</u>, 289 F.3d 865, 871 (6th Cir. 2002).

In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment.

Accordingly, to determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to limits of the Due Process Clause. <u>Reynolds v. International Amateur Athletic Fed.</u>, 23 F.3d 1110, 1115 (1994).

The Ohio long arm statute allows an Ohio court to exercise personal jurisdiction over nonresidents of Ohio on claims arising from the person's acting directly or by an agent to 1)transact any business in Ohio, 2) contract to supply services or goods in Ohio, 3) cause tortious injury by an act or omission in Ohio, or 4) cause tortious injury in Ohio by an act or omission outside Ohio if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Ohio. O.R.C. §2307.382 (2005). Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause, the Court's central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." <u>Caphalon v. Rowlette</u>, 228 F.3d 718 (2000)(<u>citing</u> <u>Cole v. Mineti</u>, 133 F.3d 433, 436 (6th Cir. 1998) and <u>Goldstein v. Christiansen</u>, 70 Ohio St.3d 232, 638 N.E. 2d 541, 545 n.1)(Ohio 1994)(per curiam)), <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945). The Court must employ three criteria to make this determination:

> (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;
>
> (2) the cause of action must arise from the defendant's activities there; and
>
> (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2003).

## B. The Parties' Arguments Regarding Personal Jurisdiction

Defendants argue correctly that Plaintiff must show a basis for jurisdiction over each individual Defendant. Kobill Airways Ltd. v. National Flight Servs., 92 F. Supp. 2d 689, 691 (N.D. Ohio 2000) (doc. 8). Defendants therefore attack Plaintiff's basis for jurisdiction over Cypert and Hartley, arguing the facts of each Defendant's relationship to Ohio bring them "within all four corners" of both Weiskopf Industries Corp. v. Hidden Valley Towel, Inc., No. 67436, 1994 Ohio App. Lexis 5773, *1, (Ct. App. Ohio, December 22, 1994), and Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000). In both the Weiskopf and Calphalon decisions, personal jurisdiction was found improper over out-of-state defendants who left the employ of Ohio companies. Although Plaintiff does not directly address Defendants' legal authorities, it is clear Plaintiff would argue the facts of this case require the Court to follow Burger King v. Rudzewicz, 471 U.S. 462 (1985),

5

wherein the Supreme Court delineated the minimum contacts framework under which an out-of-state Defendant can be haled into court.

The Court will briefly review the parties' arguments as to the specifics of each Defendant's relationship to the forum state:

### 1. Edward Hartley

Defendant Hartley argues the requirements for personal jurisdiction are not satisfied under either Ohio's long-arm statute or due process (doc. 2). Hartley argues he does not have the minimum contacts necessary to support exercising personal jurisdiction (Id.). Specifically Hartley argues he has never physically been present in Ohio nor transacted or solicited any business in Ohio (Id.). Hartley claims he is not subject to Ohio's long-arm statute because he does not have any conduct in Ohio that would subject him to the statute (Id.). Hartley alleges that telephone calls, mail service, and fascimiles, without more, do not amount to purposeful availment such that a nonresident defendant would anticipate being haled into court (doc. 8). Although Hartley's employment relationship was governed by a contract that explicitly fixed Ohio as the forum for any legal action, Hartley argues the contract was not freely bargained and is therefore unenforceable (doc. 2).

Plaintiff HCMM responds that Hartley had substantial connections with Ohio and availed himself of the privilege of

6

conducting business in Ohio (doc. 5). Specifically HCMM argues Hartley signed the employment contract containing a forum selection clause giving this Court personal jurisdiction (Id.). HCMM also argues Mr. Hartley established a substantial connection with Ohio through daily contact with the Ohio offices of HCMM for months (Id.). HCMM further alleges Mr. Hartley availed himself of the privilege of conducting business with an Ohio company by accepting a salary from them (Id.). HCMM claims Mr. Hartley is subject to Ohio's long-arm statute because he contracted to supply services to his employer in the State of Ohio under the terms of his employment agreement (Id.). HCMM argues Hartley has caused tortious injury in Ohio by converting HCMM trade secrets and confidential information, that Hartley's contact with HCMM amounts to a persistent course of conduct, and he earned more than $26,000.00 for his work for the Ohio company (Id.).

### 2. Charles Cypert

Defendant Cypert similarly argues the requirements for personal jurisdiction are not satisfied under either Ohio's long-arm statute or due process (doc. 2). Cypert alleges he does not have the minimum contacts necessary to support exercising personal jurisdiction (Id.). As in the case of Defendant Hartley, Cypert argues he has never owned or possessed any property in Ohio nor had any offices, employees, or representatives in Ohio (Id.). Cypert argues his visits to HCMM's offices do not satisfy the purposeful

availment requirement because they amounted to less than ten days over two years and because they were random (doc. 8).  Cypert claims his alleged tortious conduct occurred in Texas rather than in Ohio, and as such his actions do not establish a substantial connection with Ohio (Id.).  Cypert alleges he did not transact business in Ohio, contract to supply services in Ohio, regularly conduct business in Ohio, or engage in a persistent course of conduct in Ohio (Id.).

Plaintiff HCMM responds that Cypert had substantial connections with Ohio and availed himself of the privilege of conducting business in Ohio (doc. 5).  Specifically HCMM argues Mr. Cypert continually conducted business with HCMM in Ohio for three years, as evidenced by his regular contact with HCMM (Id.).  HCMM also alleges Cypert availed himself of the privilege of conducting business with an Ohio company by working as a contractor for HCMM, and receiving a salary (Id.).  HCMM claims Cypert is subject to Ohio's long-arm statute because his activities amounted to the transaction of business in Ohio (Id.).  Additionally, HCMM argues Cypert was physically present in Ohio for approximately three weeks over a three year period while performing contracting work for HCMM (Id.).  Because Cypert provided services at the HCMM offices in Ohio, Plaintiff argues Cypert is also subject to long-arm jurisdiction, consistent with R.C. § 2307.382(A)(2) (Id.).  HCMM's Complaint alleges Cypert knew of the noncompetition agreements

8

between HCMM and numerous of its employees and previous employees, and yet induced or attempted to induce such persons to divulge HCMM's confidential information and trade secrets (doc. 1).  At the hearing Plaintiff indicated its belief that Cypert approached Hartley and said "Come work for me," while knowing Hartley had a non-compete agreement.  Consequently, argues Plaintiff, Cypert's alleged use of trade secrets gained in Ohio also satisfies the long-arm statute (doc. 5).

### C.   This Court Has Personal Jurisdiction Over Defendants

Having reviewed this matter, the Court finds that Defendants are properly within its jurisdiction.  Although the parties both devote much analysis to Defendant Hartley's contacts, or lack thereof, to the forum, the Court need not ground its decision based on these considerations.  Hartley's contract clearly put him on notice that any legal action arising in relation to his employment with HCMM would be brought in Ohio.  Forum selection clauses are generally enforced by modern courts, unless enforcement is shown to be unfair or unreasonable.  See Restatement (Second) of Conflict of Laws § 80 (1988 Revision)("The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable."); Moses v. Business Card Express, Inc., 929 F.2d 1131,1136 (6th Cir.) cert. denied, 502 U.S. 821 (1991), Security Watch, Inc. v. Sentinel Systems, Inc., 176 F.3d 369, 374 (6th Cir. 1999).  Under Ohio law, a forum selection clause is invalid under

the following circumstances: (1) it was obtained by fraud, duress, the absence of economic power or other unconscionable means, (2) the designated forum would be closed to the suit or would not handle it effectively or fairly, or (3) the designated forum would be so seriously inconvenient that to require the plaintiff to bring suit there would be unjust.  <u>Four Seasons Enterpises v. Tommel Financial Svcs, Inc.</u>, No. 77248, 2000 Ohio App. LEXIS 5223, *1 (Ct. App. Ohio, November 9, 2000).  When alleging fraud, the fraud must relate directly to the negotiation of the forum selection clause itself, and not the contract as a whole.  <u>Id</u>. at *2.

Although Hartley contends that his employment contract was not freely bargained and is void, the Court sees no evidence that he was somehow forced to sign the employment contract or that he was an unsophisticated victim duped into accepting the forum selection clause.  The facts before the court do not suggest Hartley's contract with HCMM is an unconscionable adhesion contract, nor has Hartley demonstrated how this forum would seriously inconvenience him.  The facts do not show the enforcement of the forum selection clause to be unfair or unreasonable.  Accordingly, the forum selection clause is enforceable and Hartley is properly before this Court.

The personal jurisdiction analysis for Defendant Cypert is different from that of Hartley, as his relationship with Plaintiff was not governed by an agreement containing a valid forum

selection clause.  Consequently, the Court must determine whether the exercise of personal jurisdiction over Cypert comports with the Ohio long-arm statute and due process.

Taking the facts and evidence in the light most favorable to Plaintiff, the Court finds ample support for a finding that Cypert falls within the reach of Ohio's long-arm statute, O.R.C. § 2307.382.  In the scope of his employment with HCMM, Cypert came to Ohio during a three week period, part of which he devoted to work with an HCMM client.[1]  Clearly his work for Plaintiff in Ohio constitutes a business transaction in the state, thus satisfying O.R.C. § 2307.382(A)(1).  Moreover, Plaintiff alleges that Cypert obtained confidential information while in Ohio, and later used such information to its detriment, as an Ohio-based company.  These allegations further support a finding of jurisdiction over Cypert in Ohio.  O.R.C. § 2307.382(A)(3),(4).

The Court next must determine whether Cypert's activities in Ohio constitute "purposeful availment" such that he would not be haled into court in Ohio solely as a result of "random," "fortuitous," or "attenuated" contacts with the jurisdiction. Burger King, 471 U.S. at 475.  Defendant's reply argues that under

---

[1]This fact alone distinguishes this case from Weiskopf v. Hidden Valley Towel, Inc., No. 67436, 1994 Ohio App. Lexis 5773 at *1 (Ct. App. Ohio, December 22, 1994), in which the Court noted that the out-of-state defendants visited Ohio, but had no customer calls in the state.  The Court also, in contrast to the case at hand, found an absence of allegations supporting long arm jurisdiction.  Weiskopf, at *3.

11

<u>Calphalon Corp. v. Rowlette</u>, 228 F.3d 718, 721 (6th Cir. 2000), Cypert's contact with Ohio was simply a result of Plaintiff's choice to have its offices there, and not because Cypert sought to exploit the Ohio market (doc. 8).

In <u>Calphalon</u>, the Sixth Circuit found that an out-of-state sales representative for a cookware company could not be sued in Ohio because he did not purposefully avail himself of the benefits of Ohio law. 228 F.3d 718, 724. The defendant, Jerry Rowlette, a resident of Minnesota, entered into a contract to promote the sale of the Ohio company's products, to keep the company informed of market conditions and develop sales plans for customers. Rowlette corresponded regularly with the company by telephone and made two physical visits to Ohio, one for a sales meeting and one to accompany a client on a tour of the company's facilities. The court found that Rowlette's contacts with Ohio were fortuitous, were only because the company chose to be in Ohio, and were not because Rowlette sought to further business in the state. Thus, the Court refused to entertain the cookware company's declaratory judgment action, in which it sought a ruling that it owed nothing to Rowlette.

The holding of <u>Calphalon</u> seems to conflict with that of <u>Burger King</u>, in which the Supreme Court found personal jurisdiction over a Defendant who entered into an affiliation relationship with a company headquartered in another state. In <u>Burger King</u>, a

resident of Michigan, John Rudzewicz, entered into a franchise agreement with the fast food company, based in Florida, in order to open a restaurant in Michigan.  <u>Burger King v. Rudzewicz</u>, 471 U.S. 462 (1985).  When the deal soured and Burger King attempted to terminate the agreement in the Southern District of Florida, Rudzewicz, who had never even visited Florida, argued the Florida court lacked personal jurisdiction over him.  The Supreme Court disagreed, finding that Rudzewicz "reached out beyond" his home state of Michigan and contracted with Burger King in Florida, for a long-term business relationship that could in no sense be viewed as random, fortuitous, or attenuated.

<u>Calphalon</u> and <u>Burger King</u> can perhaps best be reconciled by the fact that the nature of the relief sought was fundamentally different.  The Plaintiff in <u>Burger King</u>, unlike that in <u>Calphalon</u>, sought economic damages for an alleged breach of contract that threatened its business.  The use of Burger King's trademarks and confidential business information in Michigan could very well have caused a detriment to the Florida Company.  In <u>Calphalon</u>, the plaintiff company sought declaratory judgment that it owed nothing to its former sales representative, who the company had terminated.

The Court finds the quality of Cypert's relationship to the forum state in this case more in line with <u>Burger King</u> than <u>Calphalon</u>.  Here, Plaintiff alleges Cypert came to Ohio for more than just meetings at the headquarters, but he came to Ohio to

13

consult with Plaintiff's clients, and while in Ohio, he obtained confidential information.  Here Plaintiff alleges Cypert took such confidential information and has actively used it to Plaintiff's detriment.  Under these allegations, Cypert has acted in Ohio and has caused forseeable consequences to Plaintiff's business in Ohio.  Plaintiff's causes of action for breach of fiduciary duty, conversion, tortious interference with business relations, and for violation of Ohio's Uniform Trade Secret Act are all related to the alleged misuse of the confidential information Cypert allegedly took from Plaintiff.  These alleged acts of Cypert are substantial enough to make the Court's exercise of jurisdiction over him reasonable.  <u>Youn v. Track, Inc.</u>, 324 F.3d 409, 418 (6th Cir. 2003).  For these reasons, the Court denies Defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to Cypert.

**III.  Plaintiff's Motion to Remand**

**A. The Standard for Removal**

If the statutory requirements for removal are met, removal from state court to federal court is an absolute right <u>Regis Assoc. v. Rank Hotels</u>, 894 F.2d 193, 195 (6th Cir. 1990). Under federal law, "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and

14

division embracing the place where such action is pending." 28
U.S.C. §1441(a).  On November 1, 2004, Defendant Cypert removed
this action from the Hamilton County Court of Common Pleas, where
Plaintiff had originally filed suit.

### B. The Parties' Arguments

Plaintiff bases its motion to remand on the above-
mentioned forum selection clause in the contract with Defendant
Hartley.  Plaintiff argues the language of the provision, which
provides that "any legal action...commenced...shall be filed in
the Court of Common Pleas, Hamilton County, Ohio," means that the
Hamilton County Court is the exclusive venue for any such action
(doc. 4).

Defendant Hartley responds that the employment agreement
is not valid or enforceable because he was coerced into signing
the agreement (doc. 9).  Defendant Cypert responds that he is not
a signatory to the employment agreement between Hartley and HCMM,
and therefore should not be bound by its terms (Id.).  Both
Defendants contend, even if the employment agreement is valid,
this Court should retain jurisdiction (Id.).  This conclusion is
based in part on the number of claims filed against the Defendants
(Id.).  Although HCMM has brought ten claims against the
Defendants, only one of those claims deals with the employment
agreement signed by Mr. Hartley (Id.).  The Defendants also
contend that the use of abstention is an extraordinary measure not

15

warranted in this instance (Id.).

At the hearing in this matter the Court questioned Plaintiff regarding its position that the forum selection clause precludes removal.  Plaintiff responded that in <u>Koch Erecting Company v. New York Convention Center Development Corp.</u>, 838 F.2d 656 (2nd Cir. 1988), the court interpreted a nearly identical forum selection clause to preclude removal.  In <u>Koch</u>, the court reasoned that language stating an action could only be commenced in state court precluded removal to federal court, because in its view, removal to federal court constituted the "commencement" of an action in federal court.  838 F.2d 656, 659.  This court rejects such reasoning, as it would result in the waiver of a statutory right based on an ambiguity in the contract.  Plaintiff could have added a phrase to its forum selection clause stating that after having commenced the action in state court, the action "shall not be removable."  Nothing in Hartley's contract precludes removal. Certainly, as Cypert did not have a written contract with HCMM, there is no forum selection clause applicable to him.  Both Defendants are well within their rights to remove this action to this Court.  This Court, therefore, may properly retain jurisdiction.

## IV. Conclusion

The Court finds that Defendant Hartley's forum selection clause is enforceable such that he is properly before this Court

to defend Plaintiff's allegations against him.  Defendant Cypert is also properly before this Court, as his contacts with Ohio give rise to personal jurisdiction over him under both the Ohio long arm statute and the requirements of due process.  Plaintiff's motion to remand this case to state court is not well-taken, as the forum selection clause in Hartley's contract does not preclude removal, and there is no basis for such a remand as to Cypert.

Accordingly, the Court DENIES Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (doc. 2) and DENIES Plaintiff's Motion to Remand (doc. 4).

SO ORDERED.

Dated: September 20, 2005      /s/ S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge

17